<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VITO A. PRIORE, | |
| *Plaintiff*, | Civ. No. 13-5229 (KSH) (CLW) |
| v. | |
| CARAVAN INGREDIENTS INC., CSM BAKERY SUPPLIES NORTH AMERICA, MICHAEL KRIZMAN, FRANK MALLEY, AL FARMER, ELWOOD LICHACK, RICHARD ROE, HENRY ADAMS, | <u>OPINION</u> |
| *Defendants*. | |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.    <u>Introduction</u>**

Plaintiff Vito A. Priore ("Priore") has sued his former employer, its "parent or subsidiary" company, and several individuals, alleging in substance that his employment was wrongfully terminated. Defendants removed the lawsuit from state court [D.E. 1], and now move to dismiss the complaint. (D.E. 3.) As set forth below, the motion will be granted.

**II.    <u>Background</u>**

The complaint contains little in the way of specific factual allegations.  By way of background, it appears that from some time in 2007 until August 8, 2011, Priore worked for defendant Caravan Ingredients Inc. ("Caravan") and its "corporate parent or subsidiary," defendant CSM Bakery Supplies North America ("CSM"), in East Rutherford, New Jersey.  (D.E. 1-1 ("Compl."), Count 1, ¶ 1.)  His supervisors were Michael Krizman, Frank Malley, Al Farmer, Elwood Lichack, "Richard Roe," and "Henry Adams," the last two names being fictitious.

1

(Compl., Count 1, ¶¶ 2-3.) He contends these supervisors had control over "hiring or terminating the times of employment," shifts, recommendations as to whether an employee would be terminated, "pay and perquisites of employment," and employee duties. (*Id*. ¶ 3.) Priore further contends that his employment was governed by an employee handbook ("Handbook") addressing such topics as employment opportunity and "disability employment," and that the Handbook created a duty to continue his employment "in good faith without wrongful conduct [or] violation of public policy." (*Id*. ¶¶ 4, 6.)

Priore asserts that defendants were aware of his national origin, ethnicity, age, and medical conditions. (Compl., Count 1, ¶ 5.)  Notwithstanding this awareness, however, from approximately 2009 to August 8, 2011, the date he was fired, Priore alleges that defendants "violate[d] and interfere[d] with [his] right to earn a livelihood," harassed him, discriminated against him based on his age, nationality, and ethnic background, and acted in an arbitrary and capricious manner with respect to setting the terms of his employment. (*Id*. ¶¶ 8-9.) Ultimately, he claims, they terminated him, purportedly in violation of various state and federal laws and "public policies." (*Id*. ¶¶ 7-8.) These policies are identified in the complaint as including the federal and state constitutions, statutes, case law, regulations, and administrative decisions; more particularly, Priore points to the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), and the New Jersey Law Against Discrimination ("NJLAD").  (*Id*. ¶ 7.) Priore further asserts that defendants' conduct constituted a breach of his "employment contract" and the covenant of good faith and fair dealing. (Compl., Count 2, ¶ 2.)

On July 25, 2013, Priore filed a three-count complaint in state court. (*See generally* Compl.; *see also* D.E. 1 ("Notice of Rem.") ¶ 1.) In count 1, Priore appears to assert claims for harassment and discrimination on the basis of age, national origin, and ethnicity, and for wrongful termination.

(Compl., Count 1, ¶¶ 5-9.) In count 2, he contends that defendants breached his employment contract with Caravan, and alleges that he "had an express and implied contract of good faith continuation of the contract and 'covenant of good faith and fair dealing' of employment." (Compl., Count 2, ¶ 2.) He asserts that this contract and the covenants he invokes are enforceable and are to be interpreted under the federal and state laws he cited in count 1, "in a fair and just manner in consideration of [his] age, disabilities, national origin and ethnic background." (*Id*.) Count 3 purports to be a claim for punitive damages. (Compl., Count 3, ¶ 3.)

Priore served the complaint on Caravan, CSM, Lichack, and Malley on or about August 5, 2013. (*See* Notice of Rem. ¶¶ 1-2.)[1] In their notice of removal filed on August 30, 2013, defendants invoked federal question jurisdiction on the ground that Priore's claim for what it characterizes as "wrongful termination in violation of public policy" invokes, *inter alia*, federal laws as the relevant public policy. (*Id*. ¶¶ 11-12.) They further asserted that the Court has supplemental jurisdiction over counts 2 and 3. (*Id*. ¶ 14.)

On September 5, 2013, defendants moved to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (D.E. 3.) They argue that Priore has pleaded insufficient facts to make out a common law, or *Pierce*,[2] wrongful discharge claim. (D.E. 3-1 ("Defs. Br.") at 3-4.) They further argue that, to the extent Priore is asserting a breach of contract claim based on the Handbook, he fails to cite any language in it creating a promise about the terms or conditions of his employment, and that in any event, the

---

[1] The notice of removal asserts that Krizman and Farmer were not served with the complaint. (*See* D.E. 1, ¶ 3.)  The Court issued a call for dismissal against these defendants, returnable June 24, 2014.  (D.E. 13.)  No proof of service was filed with respect to them, and they were dismissed from this action as a result.  (D.E. 14.)  As such, the term "defendants" used herein refers only to the moving defendants: Caravan, CSM, Malley, and Lichack.

[2] *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980).

Handbook's language does not alter, and in fact explicitly preserves, the presumption of employment at will. (*Id*. at 6-7.) Defendants contend that if Priore is asserting a claim for breach of the implied covenant of good faith and fair dealing, such a claim must also fail because he has not established that a contract exists. (*Id*. at 9.)

Finally, defendants argue that count 3, which seeks punitive damages, should be dismissed because it is not a cause of action but a type of relief, and because Priore's claims in counts 1 and 2 fail, he is not entitled to any relief.  (*Id*. at 9.)

 In opposing, Priore argues that his pleading clearly states "what really happened" to him, and accordingly, that "there is nothing wrong with letting the Plaintiff go forward with his case." (D.E. 6 ("Pl.'s Br.") at 11.) Invoking documents he appends to his opposition brief, Priore argues that "there are material facts in dispute," precluding dismissal. (*Id*. at 5.) As to count 1, Priore, referencing the exhibits to his brief,  argues that he was harassed on the basis of his age, and that "[r]easonable minds could also conclude" that his treatment "had elements of" national origin and disability discrimination, in contravention of NJLAD. (*Id*. at 9-10.)

As to count 2, Priore's argument is not clear. He appears to take the position that a reasonable factfinder could conclude that there was an implied contract between the parties and that it should be read to protect his employment because his job performance was not deficient and the company had greater bargaining power. (*Id*. at 11-13.)

Priore's exhibits attached to his opposition brief include filings in the state court, psychiatric and medical reports pertaining to his various injuries and disabilities, records relating to workers' compensation claims made during the course of previous employment, a "certification" by Priore in opposition to defendants' motion, an excerpt from the Handbook, and a "diary" detailing purported instances of discriminatory or hostile treatment Priore experienced.

(*See* D.E. 6-1 to D.E. 6-4.)  In reply [D.E. 7], defendants note again that Priore failed to provide facts to support his legal claims and that what he attached to his opposition brief is irrelevant.  They also argue that by not opposing their argument about the punitive damages claim, Priore has abandoned it.

## III.   <u>Discussion</u>

### A.  <u>Standard of Review</u>

The Federal Rules require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As interpreted, this language requires complaints to satisfy a "plausibility" standard in order to survive dismissal under Fed. R. Civ. P. 12(b)(6).  Thus, complaints must "set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]'" do not suffice, nor do "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court takes as true the factual allegations in the complaint and disregards legal conclusions.  *See Fowler*, 578 F.3d at 210-11.   Only if those factual allegations permit the Court to infer that defendants are liable for the misconduct Priore alleges may his lawsuit proceed beyond the pleading stage.  *See Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 234-35 (3d Cir. 2008); *Fowler*, 578 F.3d at 210.

**B.  Count 1**

The following paragraphs constitute the sum of Priore's "factual" allegations in support of count 1 with respect to defendants' alleged wrongful conduct:

> 8.      During the time period from approximately 2009 until August 8, 2011 the defendants did jointly, severally and concurrently violate and interfere with the plaintiff's right to earn a livelihood and did in bad faith harass the plaintiff and did discriminate against the plaintiff and did act in an arbitrary and capricious manner in assigning the terms and activities of the plaintiff Vito A. Priore's employment and did wrongfully terminate the plaintiff, Vito A. Priore, on or about August 8, 2011 in bad faith, in violation of the laws and public policies set forth above causing economic harm, economic wrong, economic damage and psychic injury and psychic trauma by reason of the wrongful conduct and wrongful termination and harassment of the plaintiff by each and all of the defendants and by the negligent failure of the corporate defendant to correct the wrongful conduct of the individual defendants in harassing the plaintiff, Vito A. Priore.
>
> 9.      The defendants did jointly, severally or concurrently discriminate against Vito A. Priore on the basis of age, nationality and ethnic background in violation of all of the public policy and contract policy set forth above and did wrongfully cause tangible economic impact and effect on the terms of employment of Vito A. Priore with Caravan and did wrongfully interfere with the economic opportunity and relationship of Vito A. Priore.

(Compl., Count 1, ¶¶ 8, 9.)  Priore does not specify *how* or *when* defendants "violate[d] and interfere[d] with [his] right to earn a livelihood" or harassed him or discriminated against him; that is, what they did and which defendants did it.  He does claim that defendants were "aware" of his national origin, ethnic background, age, and medical conditions [*id.* ¶ 5], but all of these characteristics and conditions are left unspecified in the complaint.  Inevitably, then, Priore does not connect this awareness he alleges to any conduct by defendants, beyond making the conclusory statement that they discriminated against him [*id.* ¶ 9].  Assuming Priore is contending that the discrimination and harassment he allegedly experienced were violations of the "public policy" he identifies in paragraph 7 of count 1 – which, as further discussed below, runs the gamut from

federal and state constitutional and statutory law to decisional and administrative law, and includes Title VII of the Civil Rights Act, NJLAD, and the Americans with Disabilities Act – the complaint provides insufficient information for the Court to infer "that the defendant[s] [are] liable for the misconduct alleged." *Fowler*, 578 F.3d at 210. In sum, not only does Priore fail to specify the particular laws he invokes and to link the elements of a cause of action under such laws to factual allegations specific to his situation, he does not even identify the misconduct itself.

Priore also appears to assert, in count 1, a claim for wrongful termination in violation of public policy. In *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980), the New Jersey Supreme Court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." As sources of public policy, the court listed "legislation; administrative rules, regulations or decisions; and judicial decisions." *Id.* In recognizing this cause of action, the Court reasoned that "'[a]n employer's right to discharge an employee at will carries a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a clear mandate of public policy.'" *Tartaglia v. UBS PaineWebber Inc.*, 197 N.J. 81, 102 (2008) (quoting *Pierce*, 84 N.J. at 72). "To establish a case for common law wrongful discharge, the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Brangan v. Ball Plastic Container Corp.*, No. 11-5470, 2012 WL 1332663, at *7 (D.N.J. Apr. 17, 2012) (Kugler, J.) (citing *Tartaglia*, 197 N.J. at 109-10; *MacDougall v. Weichert*, 144 N.J. 380, 391 (1996)).

Priore alleges that his termination violated public policy as expressed through federal and state constitutional principles, judicial decisions, statutes, and administrative regulations and decisions. (Compl., Count I, ¶ 7.) In so doing, Priore merely pastes *Pierce*'s definition into his pleading, rather than identifying a specific expression of "public policy." As a result, he fails to

satisfy the first element of a *Pierce* cause of action. Although the complaint cites the ADA, Title VII, and NJLAD, it includes the statutes generally as examples of the "public policy" defendants allegedly violated. (*See* Compl., Count I, ¶ 7) ("The public policy is meant to include, but not limited to . . . Statutory Law . . . including the . . . (ADA) . . . (Title VII) . . . (LAD) . . . ."). This is hardly the "clear mandate of public policy" required to establish a *Pierce* cause of action.

Priore also fails to plead the second element of a *Pierce* claim. Because Priore has not provided an account of the events leading to his termination from Caravan it is impossible to ascertain from the complaint as drafted *how* his termination breached any one of the many public policies he recites.  (*See* Compl., Count I, ¶¶ 8-9.)

Overall, because it is not clear from the complaint what cause or causes of action Priore is asserting in count 1, and because in any event he includes insufficient factual allegations therein, count 1 must be dismissed. The Court assumes that Priore attempts to avoid this fate by attaching various documents to his opposition.  As an initial matter, on a motion to dismiss, the Court may only consider the allegations in the complaint, exhibits attached to it, matters of public record, and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The documents Priore submits do not fit into these categories.[3]  Further, even if they did, in providing them Priore is attempting to add factual allegations now that he failed to include in the complaint and possibly to clarify legal theories in the complaint.  "'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,

---

[3] Whether the workers' compensation records Priore appends are public records is not clear, but even were the Court to consider them he does not explain how those records are relevant to his claims.

836 F.2d 173, 181 (3d Cir. 1988) (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Frederico v. Home Depot,* 507 F.3d 188, 201 (3d Cir. 2007) (declining to consider "after-the-fact allegations" in assessing sufficiency of complaint). In short, Priore may not cure the obvious deficiencies in his complaint with a stapler.

## C. <u>Count 2</u>

The Court reads count 2 as contending that defendants breached an employment contract between Caravan and Priore.  (Compl., Count 2, ¶ 2.)  It further contends that defendants breached a "covenant of good faith and fair dealing" regarding Priore's employment.  (*Id.*)  Recognizing that this count is based on state, not federal law, because Priore may choose to file an amended complaint, see *infra*, the Court points out the serious pleading deficiencies of count 2.

"To state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico*, 507 F.3d at 203.  As discussed below, Priore's complaint as drafted fails to plead a breach of contract claim in a manner sufficient to survive dismissal.

Employment is presumptively at will in New Jersey: "Under New Jersey law, the employment-at-will doctrine provides that 'an employer may fire an employee for good reason, bad reason, or no reason at all' unless prohibited by law or public policy." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 308 (3d Cir. 2004) (quoting *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 397 (1994)).  "Either party may terminate an employment relationship at will unless an agreement exists between the parties that provides otherwise." *Id.*  "The at-will presumption may only be overcome where such intention is 'specifically stated in explicit, contractual terms.'" *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (Greenaway, J.) (quoting *Bernard v. IMI Sys., Inc.*, 131 N.J. 91, 106 (1993)).

Count 2 of the complaint does not specify the source of the contractual relationship Priore alleges was breached. There is, however, a paragraph in count 1 alleging that "[i]ncluded in [his] employment . . . were the terms of" the Handbook, which included "the terms of Equal Employment Opportunity, disability employment and other terms of employment." (Compl., Count 1, ¶ 4.) An employment manual can, as a general matter, create an implied contract that alters an employee's at-will status. *Wade v. Kessler Inst.*, 172 N.J. 327, 339 (2002) (citing *Woolley v. Hoffmann-La Roche, Inc.*, 99 N.J. 284, 297-98, *modif. on other grounds*, 101 N.J. 10 (1985)). More specifically, "[a]n employment manual providing terms and conditions of employment that include grounds and procedures for dismissal can create an employment contract." *Witkowski*, 136 N.J. at 392. *See also id.* at 393 ("An established employment manual that expresses company-wide employer policy may give rise to an implied contract of employment if its provisions contain an express or implied promise concerning the terms and conditions of employment.") (citations and internal quotation marks omitted).

Thus, while it is possible for an employee manual to give rise to a contractual employment relationship, there is "[n]o categorical test" to determine whether the manual in fact confers "enforceable obligations" with respect to the employer-employee relationship. *Id.* at 392. "[T]he basic test for determining whether a contract of employment can be implied turns on the reasonable expectations of employees," and relevant factors can include the language of the manual and "the context of [its] preparation and distribution." *Id.* at 393. Here, Priore's complaint does not specify which terms or conditions in the Handbook he contends created a contractual relationship, nor does it discuss any context about, for example, the breadth of the Handbook's distribution. Put differently, "it is impossible to discern what the alleged contract consists of." *Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2014 WL 1450113, at *9 (D.N.J. Apr. 14, 2014) (McNulty, J.).

He has therefore insufficiently pleaded the first element of his breach of contract claim.  Priore also fails to specify how the contract he alleges was in place was breached.  Instead, the claim embodied in count 2 is precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation'" that is insufficient to survive a motion to dismiss.  *See Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

In addition to arguing that Priore has not identified language in the Handbook allegedly giving rise to an obligation to continue his employment, defendants point to passages in it that purport to preserve employees' at-will status.  Under New Jersey law, employers can avoid the creation of contractual obligations in employment manuals by including appropriate disclaimers. *See Woolley*, 99 N.J. at 285, 309.  The Court declines at this time to reach the issue of whether the disclaimer in the Handbook excerpt provided by defendants is sufficient, given that Priore has not pointed to language creating a contractual relationship in the first instance.

Finally, to the extent count 2 can be read as including a claim for breach of the implied covenant of good faith and fair dealing, it too fails.  Such a claim "is dependent on the existence of a valid employment contract."  *Anderson*, 589 F. Supp. 2d at 534; *see also Russelman v. ExxonMobil Corp*., No. 12-752, 2012 WL 3038589, at *7 (D.N.J. July 25, 2012) (Kugler, J.) (dismissing claim for breach of implied covenant of good faith and fair dealing where complaint failed to "sufficiently allege facts to support the existence of a contractual relationship between employee and employer").  As Priore's complaint lacks factual allegations sufficient for the Court to conclude that there was a contractual relationship, he cannot meet the first element of the test for this type of claim.  *See Russelman*, 2012 WL 3038589, at *7 (citing *Wade v. Kessler. Inst.*, 343 N.J. Super. 338, 347 (App. Div. 2001) (reciting elements of claim).

**D.  Count 3**

Count 3 of the complaint seeks punitive damages on the ground that the defendants' conduct was "intentional or tantamount to intentional," or "the result of gross neglect or willful and wanton misconduct, tort or wrong."  (Compl., Count 3, ¶ 3.)  Priore's opposition to the motion to dismiss is silent as to this claim, suggesting he has abandoned it.  Moreover, while a plaintiff seeking punitive damages must include a request for them in the complaint, *see* N.J.S.A. 2A:15-5.11, punitive damages are not a separate cause of action.  *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000) (Greenaway, J.).  As the substantive counts fail to state a claim, this count will likewise be dismissed.[4]

**E.  Leave to Amend**

Priore has not sought leave to amend his complaint.  "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  As the Court's finding that Priore's failure to state a claim depends on a lack of clarity in setting out the specific causes of action he asserts and on the dearth of factual allegations in the complaint, the Court is unable to conclude at this juncture that amendment would be futile.  Accordingly, Priore will be afforded 21 days to file an amended complaint. The parties are admonished that any amended complaint would have to provide a basis for the Court to exercise subject matter jurisdiction in order for the case to remain in federal court.

---

[4] Priore has not specified the claim or claims as to which he seeks punitive damages.  The Court notes that punitive damages are available in only limited circumstances for breach of contract claims.  *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir. 1993) ("Under New Jersey law breaches of contract, even if intentionally committed,  do not warrant an award of punitive damages in the absence of a showing that defendant also breached a duty independent of that created by the contract.").

**IV.**     **<u>Conclusion</u>**

For the foregoing reasons, the motion to dismiss is GRANTED, and the complaint is dismissed without prejudice.  Priore may file an amended complaint within 21 DAYS of the entry of this opinion and accompanying order.


                                                                    /s/ Katharine S. Hayden_____
Date: June 30, 2014                                     Katharine S. Hayden, U.S.D.J.